United States District Court
Middle District of Florida
Tampa Division

**ALEXIS MARRONE,**

 Plaintiff,

v.                 No. 8:20-cv-1424-LLL

**KILOLO KIJAKAZI ACTING,**
**COMMISSIONER OF SOCIAL SECURITY,**[1]

 Defendant.
_____

### Order Reversing Decision of Commissioner

Alexis Marrone seeks judicial review of a decision by the Commissioner of Social Security denying her claim for Supplemental Security Income (SSI) under the Social Security Act. 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the Commissioner's decision will be reversed and remanded.[2]

### Background

Marrone was born on May 13, 1994, attended school through the 11th grade, and has no past relevant work experience. Tr. 218, 222, 25. On March 10, 2017, she applied for SSI because of Marfan Syndrome, cranial reconstruction, severe scoliosis,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant in this suit.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, doc. 18, filed November 30, 2020; Order, doc. 21, entered December 3, 2020.

1

mitral valve prolapse, intellectual limitations, and a birth defect in her heart. Tr. 195-96, 217, 221. Marrone eventually amended her disability onset date to March 1, 2017. Tr. 217. Marrone was 22 years old when she applied. The Social Security Administration denied her application both initially and upon reconsideration. Tr. 106, 112. An Administrative Law Judge (ALJ) conducted a hearing on March 21, 2019. Tr. 15, 43. At the hearing, Marrone was represented by a non-attorney and testified on her own behalf. Tr. 43-75. A vocational expert also testified. *Id.*

In a decision dated April 9, 2019, the ALJ found Marrone: (1) had not engaged in substantial gainful activity since March 1, 2017, the initial application date; (2) had the severe impairments of degenerative disc disease, Marfan Syndrome, mitral valve prolapse, scoliosis, learning disorder, and anxiety; (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in C.F.R. Part 404, Subpart P, Appendix 1; (4) possessed the residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl; must avoid temperatures extremes, humidity, vibration, pulmonary irritants, hazardous machinery and heights; and can perform simple, routine, and repetitive tasks such as unskilled work with an SVP of 1 or 2 and a GED reasoning level up to 3;

and (5) could perform jobs in the national economy given her age, education, work experience, and RFC, such as sales attendant, photocopy machine operator, and office helper. Tr. 18-26. Considering these findings, the ALJ concluded Marrone was not disabled within the meaning of § 1614(a)(3)(A) of the Social Security Act. *Id*. at 26. On June 7, 2019, Marrone requested the Appeals Council review the ALJ's decision; her request was denied. Tr. 1, 6. The ALJ's decision is the final decision of the Commissioner.

## Authority

The Social Security Act provides benefits to those who cannot find work because of a disability. *See* 42 U.S.C. § 423(a). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a)[3]. A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

The Social Security Regulations (Regulations) set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. *See Carter v. Comm'r of*

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations (C.F.R.) are to the version in effect at the time of the ALJ's decision.

*Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)). An ALJ must determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) the severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC—the capacity to work notwithstanding impairments—to perform past relevant work; and (5) when considering the claimant's RFC, age, education, and work experience, there are other jobs the claimant can perform in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

Although the claimant has the burden of proof in steps one through four, the burden shifts to the Commissioner in step five to show "the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Goode v. Comm'r of Soc. Sec*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner meets that burden, it shifts back to the claimant to "prove that he is unable to perform those jobs in order to be found disabled." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

A court's review of a decision by the Commissioner is limited to determining whether correct legal standards were applied and whether substantial evidence supports the findings. 42 U.S.C. § 405(g); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (additional

citations and quotations omitted). The Supreme Court in *Biestek* clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* The Court "may not decide facts anew, make credibility determinations, or re-weigh the evidence." *Carter v*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). Within this role, however, federal courts do not "act as automatons." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The court retains an important function to "scrutinize the record as a whole" and determine whether the ALJ's decision was reasonable. *Id.* While the court reviews the Commissioner's decision with deference to his factual findings, legal conclusions are reviewed de novo. *See Keeton v. Dep't of Health and Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation omitted).

An ALJ must consider every medical opinion. *See* 20 C.F.R. § 404.1527(c).[4] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The Eleventh Circuit has explained an ALJ "must state with particularity the weight given to different medical opinions and the reasons

---

[4] The Regulations which govern the evaluation of medical opinions, including altering the weight to be given to treating doctors, were amended for applications filed after March 27, 2017. 20 C.F.R. § 1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n. 4 (11th Cir. 2021). Because Marrone applied before that date, the Court applies the Regulations in 20 C.F.R. § 416.927.

therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

When assigning weight to a medical opinion, including those by examining and non-examining sources an ALJ must consider many factors, including: (1) whether the source has examined the claimant; (2) whether the source has a treatment relationship with the claimant, including the frequency of examination, how long the source has had a treatment relationship and the nature and extent of the treatment relationship; (3) whether relevant medical evidence supports the opinion; (4) whether the medical opinion is consistent with the record as a whole; and (6) whether the medical opinion is given by a specialist. 20 C.F.R §§ 404.1527(c), 416.927(c), 404.1527(e), 416.927(e).

There are "three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). Typically, treating physicians are given the most deference because of the likelihood they can offer a more comprehensive picture of the claimant's health history. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019). The opinion of a non-examining physician is given less weight when it contradicts the opinions of an examining physician. *Id.* at 1260 (citing *Sharfarz*, 825

F.2d at 280). The opinion of a non-examining physician alone cannot meet the threshold of "substantial evidence." *Id.* Finally, "[a]lthough the opinion of an examining physician is ordinarily entitled to greater weight than that of a non-examining physician, the administrative law judge [is] free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). *See also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted) (explaining that if an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he must clearly articulate the reasons showing good cause for discounting it.).

## Analysis

Marrone raises three issues on appeal: (1) new and material evidence submitted to the Appeals Counsel warrants remand; (2) the ALJ failed to properly consider the opinions of Dr. McCormack and Dr. Passman; and (3) the ALJ's RFC evaluation was not supported by the evidence. The question of whether the medical opinion of Dr. McCormack, a treating cardiologist, was properly considered impacts my analysis of the remaining matters; therefore, I begin with that issue.

## The Opinion of Dr. McCormack

Marrone argues the ALJ failed to properly consider the medical opinion of Jorge McCormack, M.D. The Commissioner argues first, that the ALJ was correct not

7

to weigh Dr. McCormack's statements because they are not "medical opinions" as contemplated by the regulations, 20 C.F.R. § 416.927(a)(1). Doc. 31 at 12.[5] Second, to the extent the ALJ erred by not assigning weight to Dr. McCormack's statements, such error would be "harmless, as the statements Plaintiff cites do not suggest more severe restrictions than those the ALJ included in the RFC." *Id.* at 12.

At the outset, the Commissioner's argument that Dr. McCormack's statements are not "medical opinions" contradicts case law in this Circuit and the language of the regulations. *Winschel*, 631 F.3d at 1179. Marrone was treated at Pediatric Cardiology Associates in July and August 2018 for her Marfan's and Brugada Syndrome.[6] Tr. 678-90. A review of the record, further discussed below, reveals Dr. McCormack's treatment notes described Marrone's symptoms, diagnoses, and made several judgments about the severity of her impairments. *Id.* The records of Dr. McCormack "clearly constituted a 'statement[ ] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Marrone's] impairment(s), including [Marrone's] symptoms, diagnosis and prognosis, what [Marrone] can still do despite impairment(s), and [Marrone's] physical or mental restrictions." *Id.* (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

---

[5] The Commissioner does not dispute Dr. McCormack is a treating physician under the operative Regulations.

[6] Treatment notes suggest that Marrone was also seen by Dr. McCormack in 2013 and 2017. Tr. 678, 683.

Yet a review of the ALJ's decision reveals he failed to assign weight to the medical opinion of Dr. McCormack. Tr. 24. The ALJ recounted that Marrone was treated at Pediatric Cardiology Associates from July 2018 through August 2018, but ultimately concluded that "[a] physical examination at this facility revealed mostly normal results, aside from quiet precordium and mid systolic click." *Id.* The ALJ provided record cites to the normal results. *Id.* He then recited the results of some of her cardiac testing, recounting that "[a]n echocardiogram revealed mitral valve dysplasia borderline to mild aortic root dilation, normal ventricular function, LVEF of 62%; and dysplastic MV with moderate prolapse. A heart Holter test revealed sinus rhythm with large amount of premature ventricular contractions (PVC's) and at least 2 predominant morphologies of her PVC's." *Id.* (internal citations omitted).

While the ALJ need not recount every single medical finding by Dr. McCormack, *see Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 n. 3 (11th Cir. 2021) (explaining an ALJ does not have to address every piece of medical evidence and procedure), the ALJ highlights normal testing, without mentioning or substantively addressing the opinions Dr. McCormack offers in his records about Marrone's need for additional monitoring and treatment due to her Marfan and Brugada diagnoses. The Eleventh Circuit has long held that where an agency "focus[es] upon one aspect of the evidence and ignore[s] other parts of the record" it would be improper to find the agency's conclusion to be "supported by substantial evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). "It is not enough

9

to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." *Id.* (citations omitted). The ALJ's analysis of the treatment notes from Pediatric Cardiology Associates, Dr. McCormack's practice, suggest that Marrone was seen once. Tr. 24. However, the records indicate she was seen on July 11, 2018, July 20, 2018, and August 22, 2018, and that each visit resulted in different recommendations, restrictions on activities, and the notation of multiple test results with varying significance, tr. 677-90. *Compare* tr. 690 (notes from August 22, 2018 visit recommend "light activity only") *with* tr. 686 (notes from July 20, 2018 visit recommend no strenuous activity whatsoever) *and* tr. 689 (stating that her ventricular tachycardia was "very significant and dangerous").

The ALJ does not refer to the treatment notes from Marrone's August 22, 2018 visit with Dr. McCormack, tr. 688-90, which discuss the results of the Holter test[7] in detail. Tr. 24. The ALJ does not discuss Dr. McCormack's characterization of these results as "abnormal," his description of the totality of Marrone's testing results, genetic findings, and history as "very worrisome," his directive to consider the insertion of an implantable cardio-defibrillator (ICD),[8] nor his final recommendation

---

[7] A Holter monitor is a wearable device that records the heart's rhythm. Mayo Clinic Tests & Procedures, http://www.mayoclinic.org/tests-procedures/holter-monitor/about/pac-20385039?msclkid=e50802cab10211ecb7d941c5d0375bcd (last visited Mar. 31, 2022).

[8] An ICD is a device placed in the chest that monitors a person's heartbeats, and, if needed, delivers electric shocks to restore a regular heart rhythm. Mayo Clinic Tests & Procedures, http://mayoclinic.org/tests-procedures/implantable-cardioverter-defibrillators/about/pac-20384692 (last visited Mar. 30, 2022).

that Marrone engage in light activity only. Tr. 686, 688-90. The ALJ did discuss that Dr. McCormack observed that during her stress test on August 14, 2018, Marrone's ectopy "substantially worsened" with exercise. Tr. 689. In his "Impression" section, Dr. McCormack noted

> **1. Ventricular Tachycardia: Not Resolving or Sustained Management Complexity**
>
> I think this is very significant and dangerous. An ICD is needed. The [*sic*] is insecure about this. She will be consulting with family and perhaps other physicians. We schedule it when she[']s ready.
>
> . . .
>
> **3. Marfan's Syndrome: Not Resolving or Sustained Management Complexity**
> Mitral valve prolapse with moderate regurgitation, no significant involvement. She needs to be followed from the genetic standpoint. . . . . Her MVP may be contributing to the PVC.

Tr. 689-90. The ALJ failed to discuss these results or assign Dr. MCormack's notes any weight. *See* tr. 24.

Instead, the ALJ afforded, "great weight" to the RFC opinion of the state agency physician because his findings "[were] consistent with the record showing fairly conservative treatment for her physical impairments along with essentially normal results on physical examinations" and "imaging results and diagnostic testing" which "suggest[ed] some limitations, as they showed mild pathology. . ." Tr. 25. While state agency medical consultants are experts in evaluating disability, 20 C.F.R. § 416.927(e)(2)(i), a review of the state agency medical consultant's opinion, reveals that

11

it was dated October 11, 2017, nearly nine-months before Marrone was seen by Dr. McCormack in the summer of 2018[9]. Tr. 89-103. Thus, the state agency medical consultant did not review those records in formulating his RFC findings. And absent an assignment of weight to the medical opinion of Dr. McCormack, the Court is unable to conclude the ALJ's RFC, which is based on the state agency medical consultant's RFC, is supported by substantial evidence. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1179) ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. Otherwise, we cannot determine whether substantial evidence supports the ALJ's decision, and we will not affirm simply because some rationale might have supported the ALJ's conclusion."); *Himes.*, 585 F. App'x at 764-65 (citing *Cowart*, 662 F.2d at 735) ("It is insufficient for an ALJ to state that he considered all of the evidence when he does not indicate what weight was accorded to the evidence considered.").

The Court is unable to conclude that the ALJ's failure to assign weight to the opinion of Dr. McCormack was harmless error. Some opinions embedded in Dr. McCormack's treatment records contradict the ALJ's ultimate finding that Marrone can perform light work as defined by the regulations. *Compare Fleming v. Saul*, No.

---

[9] The list of the evidence considered by the state agency consultant does not include any of the records from Pediatric Cardiology or Dr. McCormack. Tr. 89-103. This fact is of particular significance where, as here, following her visits with Dr. McCormack, on December 8, 2018, Marrone presented to Bayfront Health Spring Hill complaining of fatigue, shortness of breath and was noted to have an irregular heart rhythm and nocturnal dyspnea. Tr. 630, 632.

3:19-cv-1466-JRK, 2021 WL 1050139, at *4 (M.D. Fla. Mar 19, 2021) (rejecting claimant's argument that the ALJ erred in assigning "great weight" to the opinions of state agency medical consultants because they did not review more current progress notes in formulating their opinions because the ALJ's decision clarified he did not solely rely on them, he discussed evidence that postdated their opinions, and their opinions were consistent with the evidence in the record.).

A complete analysis of Dr. McCormack's opinions and records on remand may affect the Social Security Administration's consideration of the various medical opinions in the record and a finding, if any, regarding Marrone's limitations. Additionally, upon remand, the ALJ must review the entire record. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983). As a result, the Court need not address Marrone's arguments about the opinion of Dr. Passman or the question of whether the RFC was supported by the evidence. Doc. 30, issues II (part two) and III. *See Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d 882 884 (11th Cir. 1990) (explaining certain arguments not need to be addressed because of the necessity of remanding on other issues); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (explaining that where case is remanded for other reasons, it may be unnecessary to review other issues raised).

### Cardiac Medical Source Statement

In the interests of a complete consideration of the evidence upon remand, the Court briefly considers the issue raised by Marrone related to a cardiac medical source

statement signed by Katie Oshmire, Advanced Registered Nurse Practitioner (ARNP), who practices with Dr. McCormack. Tr. 34-39. The problem, according to Marrone, is that the medical source statement, which was submitted to the Appeals Counsel after the ALJ rendered his decision, tr. 32-39, required the Appeals Council to remand the case back to the ALJ so that it "could have been considered by the ALJ as other source evidence or as non-acceptable medical source evidence." Doc. 30 at 11.

The medical source statement is dated April 8, 2018, one-day prior to the ALJ's decision. The Appeals Council considered the medical source statement as from Dr. McCormack, *see* tr. 2 ("You submitted a Cover Letter from the Claimant's Representative Bonnie Cannon, dated November 19, 2019 with attached Cardiac Medical Source Statement, Dr. Jorge McCormack, dated April 8, 2019, (8 pages)"). The Commissioner contends the opinion in the medical source statement is attributable to ARNP Oshmire, not Dr. McCormack.[10] Doc. 31 at 7-8.

The Appeals Council, in denying the request for review, explained that the medical source statement did not show a "reasonable probability that it would change the outcome of the decision." Tr. 2. The Commissioner argues the Appeals Council properly denied Marrone's request for review for three reasons: (1) the statement from ARNP Oshmire is not an acceptable medical source under the governing regulations;

---

[10] Both ARNP Oshmire and Dr. McCormack's names were on the evaluation; only ARNP Oshmire signed the form. However, under her signature, she printed "Katie Oshmire/Dr. Jorge McCormack." Tr. 34-38. Marrone argues the form was filled out by ARNP Oshmire on Dr. McCormack's behalf, although she concedes it is not clear whether he reviewed the form. Doc. 30 at 8.

(2) her opinion is unsupported; and (3) her opinion is not consistent with the rest of the record. Doc. 31 at 7.

The Eleventh Circuit has explained, that "[w]ith a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). When the Appeals Council is presented with evidence that was not before the ALJ, the Appeals Council must consider the evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress*, 888 F.3d at 1309 (citing *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015)).[11]

In the medical source statement, ARNP Oshmire opined that Marrone had a "marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even through your patient is comfortable at rest[;]" and was "incapable" of tolerating "even 'low stress' jobs because she is at high risk for sudden death due to underlying heart condition."

---

[11] Because this case is remanded, the Court will not assess whether the action of the Appeals Council was proper. *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *11 (M.D. Fla. Sept. 27, 2010) (declining to review the propriety of the Appeals Council's failure to remand a case due to newly submitted evidence).

Tr. 35. ARNP Oshmire further stated that that Marrone could sit for thirty minutes at one time, could stand for only 15 minutes at a time, could frequently lift and carry less than 10 pounds, could occasionally lift and carry 20 pounds, rarely lift and carry 50 pounds, rarely climb ladders and stairs, and frequently twist, stoop (bend), and crouch. Tr. 36-38. Finally, ARNP Oshmire noted that Marrone's impairments were likely to produce good and bad days, and would cause her to be absent from work more than four days per month. Tr. 39.

Upon remand, the ALJ may consider whether the information provided in the medical source statement is consistent with the medical opinions of Dr. McCormack. Because the ALJ failed to assign weight to Dr. McCormack's opinions and did not discuss relevant opinions formed after the completion of extensive cardiac testing, I am unable to evaluate the Appeals Council's finding that medical source statement did not show a "reasonable probability that it would change the outcome of the decision." Tr. 2. Considering the foregoing, the medical source statement is incorporated into the record and must be appropriately considered by the Commissioner, including the potential effects the medical source statement may have on Marrone's RFC. *Diorio*, 721 F.2d at 729 (citations omitted).

After careful consideration, including a thorough review of the record and arguments of the parties, I find the Commissioner's decision should be reversed and remanded for further proceedings as set forth below.

## Conclusion

It is **ordered**:

1. The Clerk of Court is directed to **enter judgment** pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **reversing** the Commissioner's final decision and remanding this matter with the following instructions:

   a. Re-evaluate the medical opinion of Dr. McCormack, stating with particularity the weight afforded, and the reasons supporting the assignment;

   b. Consider the medical evidence in the record as a whole, particularly the medical source statement dated April 8, 2018, in accordance with this order.

   c. Reconcile whether the opinions contained within the medical source statement submitted to the Appeals Council are those of Dr. McCormack or ARNP Oshmire.

   d. Consider how, if at all, the opinion within medical source statement indicates the severity of Marrone's impairments, and how it affects her ability to work.

Ensure additional issues raised in this appeal are considered and appropriately addressed, as necessary.

2. The Clerk is further directed to **close** the file.

3. If benefits are awarded on remand, Marrone's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Standing Order on Management of Social Security Cases entered on December 7, 2021 in Case No. 3:21-mc-001-TJC, doc. 43, ¶¶ 6, 8).

**Ordered** in Jacksonville, Florida, on March 31, 2022.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c:
Jeanette A. Kelly, Esquire
John F. Rudy, III, Assistant United States Attorney